# STATE OF MICHIGAN

# COURT OF APPEALS

In re L. R. CONRAD, Minor.

UNPUBLISHED
September 13, 2016

No. 331197
Benzie Circuit Court
Family Division
LC No. 12-001791-NA

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

The trial court previously terminated respondent-father's parental rights to his minor child in February 2014. In a prior appeal, this Court reversed the trial court's order because respondent "was not afforded a separate adjudication" as required by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). See *In re L Conrad Minor*, unpublished order of the Court of Appeals, entered September 23, 2014 (Docket No. 320728). On remand, a jury adjudicated respondent an unfit parent, determining that, despite the ability to do so, he neglected or failed to provide proper care and custody of his child. The trial court thereafter conducted a dispositional hearing, following which it entered an order terminating respondent's parental rights pursuant to MCL 712A.19b(3)(j). Respondent appeals as of right. Because respondent was not deprived of due process on remand and he was afforded reasonable efforts aimed at reunification, we affirm.

The minor child at issue in this case is currently five years old, and she has been under the trial court's jurisdiction since 2012. In particular, at an adjudication in June of 2012, the child's mother admitted the allegations in an amended petition, enabling the trial court to exercise jurisdiction over the minor child. Respondent was not adjudicated, but pursuant to application of the one-parent doctrine, respondent was provided with a parent-agency plan and the trial court entered dispositional orders in relation to respondent. Early in the case, petitioner planned to place the child with respondent, but in August of 2012, respondent requested that the child be placed in foster care while he attempted to obtain employment and appropriate housing. The child has been in foster care ever since.

The mother's parental rights were terminated in November of 2012. Proceedings and services continued with respect to respondent, including visitation and services to improve his parenting skills. Respondent showed some progress early in the case, but he proved inconsistent with parenting visits and failed to take advantage of the services offered. Eventually, the trial court terminated respondent's parental rights in February of 2014 under MCL 712A.19b(3)(c)(*i*). Respondent then appealed to this Court, and we reversed the termination of respondent's parental

-1-

rights and remanded for further proceedings because respondent had not been afforded an adjudication hearing as required by *In re Sanders*.

On remand, petitioner filed a supplemental petition relating to respondent, alleging, in part, that the child had been in foster care since 2012, that respondent had previously admitted that he could not care for her, and that he had been inconsistent with parenting time. Petitioner requested termination of respondent's parental rights at the initial dispositional hearing. The trial court held a preliminary hearing on December 4, 2015, at which the trial court ordered that respondent should receive parenting time. However, at the request of respondent's attorney, the preliminary hearing was adjourned to enable counsel to discuss the supplemental petition with respondent. The trial court continued the preliminary hearing on January 9, 2015, but respondent failed to appear. The trial court continued with the preliminary hearing and found probable cause to authorize the petition. The trial court ordered that respondent continue to receive parenting time, but the court did not order the return of the child to respondent stating:

> The child shall still be placed with the agency. The substantial risk of harm, at this point, is the child's mental well being. The child hasn't seen [respondent] in - - well she probably wouldn't even know who he is because it's been so long and she is so young. For a four year old, two years is half of your life, that's a significant amount of time. So it would be contrary to [the child's] welfare to be returned, or actually placed with [respondent]. And that would be contrary to the welfare finding, reasonable efforts, both before this matter originally went up to the Court of Appeals as it applies to [respondent] and now that it has come back - - [respondent], to this point [has] failed to show any reasonable attempt to connect with [the child].

Petitioner filed another supplemental petition on March 25, 2015, alleging that petitioner had made nine unsuccessful attempts to contact respondent to arrange visitation, that respondent refused to provide information about when he was available for parenting time, that he declined delivery of a letter from petitioner containing referrals for services, and that, on December 9, 2014, respondent left a voicemail for petitioner stating "I don't know if I am ready to do this visit thing." In total, respondent had missed 26 scheduled visits between December 9, 2014 and March 16, 2015. Another preliminary hearing was held in August of 2015, by which time respondent had missed 62 visits with the child. The trial court authorized the petition, finding respondent's failure to visit the child and cooperate with services constituted neglect.

A jury trial adjudication was held over the course of two days in October of 2015. At the time of trial, respondent had not seen the child since November of 2013, he had rebuffed numerous attempts at contact by petitioner, and he had missed all of the 81 scheduled parenting time visits. The jury determined that, despite having the ability to do so, respondent neglected or failed to provide proper care and custody for the child.

The trial court held an initial dispositional hearing on December 18, 2015 to consider petitioner's request to terminate respondent's parental rights. By the time of this hearing, respondent had missed 92 scheduled visits with the child. Donna Lehman, an expert in child development, testified regarding the importance of parenting time in forming a bond between parent and child. According to Lehman, missing 92 visits was "significant" and resulted in

numerous lost opportunities for respondent to form a bond with the child. At this time, although bonding between respondent and the child would not be impossible, Lehman testified that, in light of the child's need for permanency, further efforts would be a "detriment" to the child because it "would take years" to form such a bond and it "would take an incredible amount of work, an incredible amount of consistency that has not been demonstrated" by respondent. Lehman worried that such efforts might result in attachment difficulties for the child, long term anxiety, and even post-traumatic stress issues.

At the conclusion of the hearing, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(j), concluding that respondent had proven that he was unable to meet the child's needs and that she faced a risk of harm if returned to his care. The trial court highlighted respondent's failure to visit the child and to participate in services, noting that, based on Lehman's testimony, the child was at a reasonable risk of harm if the efforts to form a bond with respondent continued. Given the length of time the child had spent in foster care, her need for permanency, her close connection to her foster family, and the possibility of adoption, the trial court also concluded that termination of respondent's parental rights was in the child's best interests. Respondent now appeals as of right.

On appeal, respondent contends that the procedures on remand constituted a violation of his due process rights because the trial court failed to conduct a preliminary hearing in the manner set forth in MCR 3.965. According to respondent, the trial court violated MCR 3.965 because (1) the preliminary hearing was not held within 24 hours of the child's placement in protective custody, (2) the trial court failed to inquire about placement of the child with a relative, such as respondent's mother, and (3) the trial court failed to recognize that it is preferable to keep a child in her home and thus failed to consider whether services could be provided to eliminate the need for the child's placement out of the home.

In the trial court, respondent argued generally that the remand procedures deprived him of due process. However, because respondent did not object on remand to any lack of compliance with MCR 3.965, this specific issue is unpreserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014); *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012).

"Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *In re TK*, 306 Mich App at 703. However, to the extent respondent relies on MCR 3.965, because his claim is unpreserved, our review is limited to plain error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.*

Relevant to respondent's due process claims, a natural parent has "a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re Sanders*, 495 Mich at 409 (citation and quotation marks omitted). If the state seeks to interfere with this relationship, "it must provide the parents with fundamentally fair procedures." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.) (citation omitted). The basic requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* at 92 (citation

omitted). "Due process requires fundamental fairness, which is determined in a particular situation first by considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* (citation and quotation marks omitted).

In this case, as noted, respondent's parental rights were originally terminated in 2014, following proceedings in which only the child's mother had been adjudicated as an unfit parent. This Court reversed the termination of respondent's parental rights and remanded for further proceedings in light of *In re Sanders*. Given this procedural history, a brief discussion of the one-parent doctrine and the significance of *In re Sanders* is necessary to address respondent's claims in this case.

In Michigan, child protective proceedings involve two phases: (1) the adjudicative phase, during which the trial court determines that a parent is unfit and assumes jurisdiction over the child, and (2) the dispositional phase, during which the trial court has broad authority to enter orders appropriate for the welfare of the child. See *In re Sanders*, 495 Mich at 404-406. Historically, under the one-parent doctrine, "[i]n cases in which jurisdiction has been established by adjudication of only *one* parent, the one-parent doctrine allow[ed] the court to then enter dispositional orders affecting the parental rights of *both* parents." *Id.* at 407. Recently, the Michigan Supreme Court held that the one-parent doctrine was "an unconstitutional violation of the Due Process Clause of the Fourteenth Amendment" because it allowed "the court to deprive a parent of this fundamental right without any finding that he or she is unfit." *Id.* at 422. To remedy this wrong, *In re Sanders* eliminated the one-parent doctrine and mandated that every parent receive an adjudication hearing before the state can interfere with his or her parental rights. *Id.* at 415, 422.

However, in striking down the one-parent doctrine, the Court did not alter the trial court's ability to assume jurisdiction over *the child* based on the adjudication of only one parent. *Id.* at 407, 412 n 8 ("[C]ourts may assume jurisdiction over a child on the basis of the adjudication of one parent."). Nor did the Court eliminate a trial court's ability to take a child into protective custody or to order temporary foster care placement pending an adjudication. *Id.* at 416 n 12. Rather, the due process violation to be eliminated was interference with a parent's rights without affording that parent the protections of a fitness determination at an adjudication hearing. *Id.* at 415, 422. In other words, by its own terms, *In re Sanders* was concerned with "the court's exercise of its postadjudication dispositional authority" over an unajudicated parent. *Id.* at 416 n 12.

With this legal history in mind, we turn to consideration of whether the remand procedures in this case comported with the due process principles set forth in *In re Sanders*. On remand, petitioner initiated proceedings by filing a supplemental petition, and later a second supplemental petition. Respondent received multiple preliminary hearings at which the petitions were authorized based on probable cause determinations. In particular, the trial court correctly recognized that respondent's failure to visit the child constituted evidence of neglect. See *In re Rood*, 483 Mich at 113-114 (opinion by CORRIGAN, J.). Respondent exercised his right to a jury trial adjudication, MCR 3.972; MCR 3.911(A), and a jury determined by a preponderance of the evidence that, despite having the ability to do so, respondent neglected or failed to provide proper care and custody for the child. In other words, as required by *In re Sanders*, respondent received an adjudication hearing at which he was found to be an unfit parent. Following these

-4-

adjudication proceedings, the dispositional phase began, during which the trial court had broad authority to enter orders relating to respondent and to ultimately terminate respondent's rights as set forth in MCL 712A.19b. Respondent received notice of all proceedings on remand, he was afforded the opportunity to participate in those proceedings, and he was represented by counsel. Cf. *In re Mason*, 486 Mich 142, 153-154; 782 NW2d 747 (2010); *In re Rood*, 483 Mich at 108, 113-114, 118-119 (opinion by CORRIGAN, J.).

On the facts of this case, respondent was not denied due process on remand. To the contrary, respondent received the precise due process protection required by *In re Sanders*— namely, an adjudication hearing to determine his parental fitness. The adjudication trial afforded respondent due process by ensuring that the court would not exercise its dispositional authority without an adjudication of parental unfitness. See *In re Sanders*, 495 Mich at 422.

Respondent nonetheless argues that the trial court should have conducted a preliminary hearing on remand in accordance with the specific procedures set forth in MCR 3.965. Even assuming respondent was entitled to a preliminary hearing on remand,[1] he has not shown plain error from the trial court's purported deviation from MCR 3.965. In particular, respondent first argues that the trial court failed to conduct the preliminary hearing in a timely manner under MCR 3.965(A), which states that "the preliminary hearing must commence no later than 24 hours after the child has been taken into protective custody[.]" However, this provision is clearly inapplicable for the simple reason that the child was not taken into protective custody in 2014 when this case against respondent was initiated. She was removed from her mother's care as a result of her mother's neglect in 2012 and indeed placed in foster care in 2012. Cf. *In re Rood*, 483 Mich at 93. As discussed, *In re Sanders* did not alter the trial court's authority to place a child in temporary foster care, and nothing in *In re Sanders* renders the trial court's 2012 placement improper, particularly when, unlike in *In re Sanders*, respondent requested foster care placement for the child in 2012. Cf. *In re Sanders*, 495 Mich at 403, 413. Quite simply, in this case, the time to apply MCR 3.965(A), if at all, was in 2012 upon the child's removal from her mother's care. Moreover, to the extent respondent generally complains of some delay in the current proceedings, we note that, at the December 2014 preliminary hearing, he requested an

---

[1] When remanding to the trial court, this Court did not order the trial court to conduct a preliminary hearing or to specifically comply with MCR 3.965. Further, the controlling concern in *In re Sanders* was the necessity of an adjudication hearing, and the Court did not detail the specific procedures to be followed when adding a parent to child protective proceedings that had already been initiated against the other parent. In light of *In re Sanders*, amendments to the court rules have been made to specify procedures for adding a parent as a respondent to child protective proceedings initiated against another parent. See MCR 3.961(C); MCR 3.903(A)(2), (8), (13). However, these rules were not in effect when respondent's case was remanded to the trial court. Even considering these rules, it does not appear that respondent would be entitled to a full preliminary hearing under MCR 3.965 because the child was already in placement and thus the supplemental petition filed against him did not request removal of the child. See MCR 3.961(C)(3).

adjournment of the hearing, belying any claim that delay on the part of the trial court affected the outcome of the proceedings. Thus, respondent has not shown plain error.

Regarding the child's placement under MCR 3.965 following the preliminary hearing, we likewise find respondent's claims to be without merit. At the January 2015 preliminary hearing, the trial court provided a well-reasoned discussion of the child's welfare and the need for continued foster care placement pending respondent's adjudication. See MCR 3.965(B)(12), (B)(13), and (C). It is questionable whether such analysis was required given that the trial court made the necessary findings in 2012. See MCR 3.965(B)(13) ("If the court authorized the filing of the petition, the court . . . may order placement of the child after making the determinations specified in subrule (C), *if those determinations have not previously been made*."). In any event, respondent failed to appear for this hearing, he did not object to the trial court's placement decision, and he did not request placement in his home or with a relative. Indeed, while respondent now complains of the foster care placement on appeal, it was in part at *respondent's* behest that the child was placed in foster care in 2012. Further, in December of 2014, the trial court authorized parenting time for respondent, but respondent failed to avail himself of this opportunity, stating that "I don't know if I am ready to do this visit thing." On this record, it is disingenuous to now claim for the first time on appeal that, after not having seen respondent or his family for two years, the child should have been returned to respondent's care or placed with a relative pending respondent's adjudication. In sum, respondent has not shown plain error in the trial court's application of MCR 3.965. His due process arguments are without merit.

Finally, respondent also argues that he is entitled to relief because petitioner failed to make reasonable efforts at reunification. Respondent notes that his parental rights were originally terminated in February of 2014, and he was not provided with any additional services or opportunities for visitation until the case was reversed on appeal and remanded to the trial court in September of 2014. On remand, respondent contends that petitioner's true goal was adoption and that the services, which included parenting time and various referrals, did not constitute reasonable efforts aimed at reunification. In these circumstances respondent argues that the trial court clearly erred by terminating his parental rights.

We review for clear error the trial court's ultimate determinations regarding statutory grounds for termination and its best interests analysis. *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). Whether reasonable efforts were made toward reunification poses a question of fact, which we also review for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

In all cases, reasonable efforts must be made to reunite the parent and child unless certain aggravating circumstances exist. *In re Mason*, 486 Mich at 152; *In re Frey*, 297 Mich App at 247; MCL 712A.19a(2). However, while petitioner has a responsibility to expend reasonable efforts to provide services to secure reunification, "there exists a commensurate responsibility on the part of respondents to participate in services that are offered." *In re Frey*, 297 Mich App at 248.

Setting aside respondent's failure to participate in the numerous services provided to respondent before the original termination of his rights in 2014, after this Court reversed the original termination order and remanded the case, respondent missed 92 scheduled visitations

with his daughter, and in fact did not once visit the child during the additional year before the second termination hearing. The caseworker testified about her many unsuccessful attempts to reach respondent concerning visitation and possible services. She also testified that she had attempted to tell respondent that she was willing to work with his nighttime work schedule and, if transportation was an issue, she would have scheduled visitation closer to respondent; she also offered respondent gas cards. Another caseworker explained that respondent's failure to attend visitation impeded petitioner's efforts to observe respondent and make appropriate recommendations for other services. The record shows that reasonable efforts at reunification were made, but that respondent rejected those efforts. Accordingly, respondent's argument is without merit.

Ultimately, given respondent's complete failure to attempt a relationship with his child and evidence that she faced a risk of harm if additional efforts to establish a relationship were continued, the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(j). See generally *In re Rood*, 483 Mich at 117 n 53 (opinion by Corrigan, J.) (noting that a "prior lack of relationship" between parent and child may be considered under MCL 712A.19b(3)(j) when assessing whether the child would suffer harm). Likewise, given the child's nonexistent bond with respondent and her close relationship with the foster family that has cared for her since 2012, the trial court did not clearly err in its best interests determination. See *In re White*, 303 Mich App at 713. Thus, the trial court did not clearly err by terminating respondent's parental rights.

Affirmed.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering